UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRET J. CHAPIN,

        Plaintiff,

v.                                          Case No. 04-C-0208

OFFICER DERRICK SELL, *et al.*,

        Defendants.

**DECISION AND ORDER**

      Plaintiff Bret J. Chapin brought a civil rights action under 42 U.S.C. § 1983, alleging that Oshkosh Police Officer Derrick Sell brutally beat him in the course of his arrest and while being examined at the hospital. Officer Krueger is alleged to have failed to stop Sell, and the City is charged with "knowingly, recklessly or with gross negligence fail[ing] to instruct, supervise, control and discipline on a continuing basis defendant police officers in their duties to refrain from" unlawfully harassing and abusing citizens. (Complt. ¶ 15.) Officers Sell and Krueger and the City of Oshkosh have now moved for summary judgment. Plaintiff has moved for an extension to allow him to name a rebuttal expert in police procedures for trial. For the following reasons, the Officer Sell's motion for summary judgment will be denied, but Officer Krueger's motion will be granted and the City's will be granted in part. Plaintiff's motion for an extension will be denied.

**BACKGROUND**

      This case arises out of Officers Sell and Krueger's arrest of plaintiff on August 10, 2002. The facts are set forth in the light most favorable to plaintiff, the non-moving party. *See Tincher*

*v. Wal-Mart Stores*, 118 F.3d 1125, 1126 n. 1 (7th Cir. 1997). Plaintiff states that he had twelve drinks at the Polish Corners bar, left the bar, and lay down in a flower bed outside. Officer Sell roused him, words were exchanged, and Officer Sell struck plaintiff in the eye with his flashlight, breaking a bone.[1] The officers then arrested plaintiff and took him to the Mercy Medical Center for treatment. While plaintiff was lying on a gurney, Officer Sell put a pillow over his face to stop him from spitting blood, and plaintiff may have unintentionally kneed Officer Sell in the head as a response. Plaintiff claims Officer Sell then kneed plaintiff five or six times in retaliation.[2] Officer Sell admits to delivering two "focus strikes" to plaintiff's upper chest area in an effort to gain control of him as he was thrashing about. Officer Krueger allegedly witnessed all these events but refused to protect plaintiff from Officer Sell. (Braithwaite Decl., Ex. D ¶ 15, Ex. E at 45; Grogan Decl., Ex. 1.)

Notwithstanding plaintiff's present version of the events of August 10, 2002, he was charged in state court with the offense of battery to a law enforcement officer in violation of Wis. Stat. § 940.20(2) for striking Officer Sell at the hospital. At the trial, through counsel, plaintiff denied he had been the victim of police brutality at the hospital and claimed that the blows he was accused of inflicting on Officer Sell were not intentional, but were an involuntary reaction to the hold Officer Sell had applied on him and were caused by his own voluntary intoxication. The defense

---

[1] Defendants deny that there was any physical altercation with plaintiff during his arrest. According to defendants, Chapin's eye was already injured when Officer Sell approached him. (Braithwaite Decl., Ex. B; Grogan Decl., Ex. 7.)

[2] Plaintiff originally claimed that he suffered a perforated colon as a result of Officer Sell's blows. However, the court struck this claim due to plaintiff's failure to support it with medical expert testimony. (Order of March 22, 2005 at 3.)

2

was not successful, however, and the jury found plaintiff guilty. Thereafter, plaintiff commenced this action.

## ANALYSIS

Under the Federal Rules of Civil Procedure, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

As *Celotex* makes clear, the burden that each party carries with respect to a motion for summary judgment under the federal rules varies significantly depending upon which party bears the burden of proof at trial on the issue upon which summary judgment is sought. Where the party seeking summary judgment does not bear the burden of proof at trial on any element of the claim, it is enough that it inform the court of "the basis of its motion and identif[y] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. There is no requirement that a moving party who does not bear the burden of proof establish that

the element does not exist. In other words, a moving party who does not have the burden of proof at trial, (usually the defendant), is not required to prove a negative in order to make a prima facie showing for summary judgment. *Id.*

Once such a showing is made, however, the nonmoving party who does have the burden of proof at trial, (usually the plaintiff), must respond. In the face of a properly supported motion for summary judgment by the defendant, the plaintiff must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. Moreover, the party that bears the burden of proof at trial must show that it has admissible evidence to support its claim:

> When as in the present case a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of his claim, the plaintiff is required by Fed. R. Civ. P. 56, if he wants to ward off the grant of the motion, to present evidence of evidentiary quality--either admissible documents or attested testimony, such as that found in depositions or in affidavits--demonstrating the existence of a genuine issue of material fact. The evidence need not be in admissible form; affidavits are ordinarily not admissible evidence at a trial. But it must be admissible in content, in the sense that a change in form but not in content, for example a substitution of oral testimony for a summary of that testimony in an affidavit, would make the evidence admissible at trial.

*Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994) (internal citations omitted). It is for this reason that summary judgment is referred to in federal courts as the "put up or shut up moment in a lawsuit." *Johnson v. Cambridge Industries, Inc.,* 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation marks omitted).

In addition to the foregoing principles, a party moving for summary judgment or responding thereto must comply with the local rules of the district in which the motion is brought. *Koszola v. Bd. of Ed. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004). In this district, Civil L.R. 56.2

4

sets forth additional summary judgment procedures that parties are required to follow. This rule requires that the party moving for summary judgment submit either a stipulation of facts, or "the movant's proposed findings of fact supported by specific citations to evidentiary materials in the record," or a combination of the two. Civil L.R. 56.2(a). The opposing party must file

> a specific response to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists. The response must refer to the contested finding by paragraph number and must include specific citations to evidentiary materials in the record which support the claim that a dispute exists.

Civil L.R. 56.2 (b)(1).[3] The rule further provides that "[i]n deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out." Civil L.R. 56.2(e).

**I. Plaintiff's claims against Officers Sell and Krueger**

The Seventh Circuit has held that "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Lawrence v.*

---

[3]As the defendants note, plaintiff has failed to comply with the Civil L.R. 56.2 in his response to their motion for summary judgment. Specifically, he failed to include specific references to evidentiary materials in the record to support either his response to defendants' proposed facts or his own. See Civil L.R. 56.2(b)(1) and (2). Plaintiff's belated attempt to cure this defect as to his own proposed facts by filing a "record page" after defendants pointed it out in their reply is an improper attempt to supplement the record without leave of the court after briefing was completed. Accordingly, plaintiff's "record page" is ordered struck. Failure to comply with the local rules can result in the court accepting the proposed facts as admitted and granting the motion on that basis alone. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). Here, however, the defendants' statement of facts essentially repeats the allegations plaintiff has made and the facts relating to his criminal trial. The few facts proposed by defendants that actually deal with the underlying incident are too vague and indefinite to support summary judgment on all claims. As a result, plaintiff's failure to comply with the local rules is in this case is not entirely fatal.

5

*Kenosha County*, 391 F.3d 837, 843 (7th Cir. 2004) (internal citations omitted). The Seventh Circuit has explained the reasonableness standard as follows:

> In determining whether a particular seizure was reasonable, a court should carefully consider the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* (internal citations omitted). Where material facts are disputed, a jury may resolve the dispute. Once those facts are determined, however, the reasonableness of a defendant's use of force is for the court, rather than a jury, to determine. *Bell v. Irwin*, 321 F.3d 637, 641 (7th Cir. 2003) ("[R]easonableness is analyzed objectively, and as a matter of law. Judges rather than juries determine what limits the Constitution places on official conduct.").

The officers argue that plaintiff is collaterally estopped from arguing that they used excessive force because of concessions made at his state court criminal trial. They cite a colloquy between plaintiff's criminal counsel and the trial judge, in which plaintiff's counsel indicates her belief that the "hold" placed on plaintiff in the gurney did not "rise[]to the level of a claim of police brutality." (Braithwaite Decl., Ex. C at 6.) Plaintiff's counsel also stated in her opening argument, with respect to the "hold," that "it's proper procedure for the police to do something of this nature." (Braithwaite Decl. Ex. C at 68.) Plaintiff's counsel stated that she made these concessions because she did not want plaintiff to have to testify, given his criminal record. (Braithwaite Decl., Ex. C at 6, 154-156.)

In order for collateral estoppel to bar litigation of an issue in a § 1983 case, "[t]he issue must be the same as that involved in the prior judicial proceeding; the issue must actually have been litigated; the issue must have been resolved; and the issue's determination must have been necessary

6

to the judgment in the prior proceeding." *Bailey v. Andrews*, 811 F.2d 366, 369 (7th Cir. 1987). Plaintiff's concessions at his criminal trial thus do not bind him in this case unless those concessions concerned issues on which a determination was necessary in the criminal proceeding. At his criminal trial, plaintiff was convicted of battery to a law enforcement officer, contrary to Wis. Stat. § 940.20(2), which reads:

> Whoever intentionally causes bodily harm to a law enforcement officer . . . acting in an official capacity and the person knows or has reason to know that the victim is a law enforcement officer or fire fighter, by an act done without the consent of the person so injured, is guilty of a Class H felony.

The officers argue that Officer Sell would not have been acting in an "official capacity" if he was using excessive force against plaintiff, and that plaintiff's conviction therefore necessitated a finding that Officer Sell did not use excessive force.

This argument fails for two reasons. The first and most obvious is that the specific abuse alleged by plaintiff here was not relevant to charge of battery to a police officer. The alleged blow to plaintiff's face with a flashlight occurred significantly before plaintiff struck Officer Sell, and the blows to his stomach came after. The facts at issue in plaintiff's criminal trial concerned Officer Sell's placement of the pillow over plaintiff's face and plaintiff's kneeing of Officer Sell in response. Thus, even on the officers' theory of collateral estoppel, the only issue that plaintiff could be precluded from litigating is whether Officer Sell's use of the pillow constituted excessive force.

The second reason defendants' argument fails is that the Wisconsin courts have never held that an officer ceases to act in an official capacity when he uses excessive force. In determining whether an officer was acting in his official capacity, "[t]he test is whether the [officer] is acting within th[e] compass [of what he is employed to do] or is engaging in a personal frolic of his own."

7

*State v. Barrett*, 291 N.W.2d 498, 500 (Wis. 1980). The fact that the officer's conduct was unlawful does not mean that the officer was acting outside his official capacity. *Id.* An officer's use of excessive force may entitle the defendant to use force in self-defense. *State v. Mendoza*, 258 N.W.2d 260, 273 (Wis. 1977); *State v. Reinwand*, 433 N.W.2d 27, 30 (Wis. Ct. App. 1988). However, use of excessive force in the performance of official duties does not render the performance of those duties an act outside the officer's official capacity. Accordingly, the court cannot find that a determination on whether Officer Sell used excessive force was necessary to the judgment in plaintiff's criminal case.

The officers also argue that this case is an impermissible collateral attack on plaintiff's criminal conviction. When "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). A judgment in favor of plaintiff in this case, however, would in no way imply the invalidity of plaintiff's criminal conviction. Plaintiff's criminal case held him responsible for his behavior in striking Officer Sell. A judgment for plaintiff in this case would hold Officer Sell responsible for his alleged behavior in striking plaintiff, both before and after plaintiff struck Officer Sell. There is no legal or logical inconsistency between the two.

The officers finally argue that the amount of force they used against plaintiff was reasonable. At this point, it is necessary to distinguish the alleged conduct of Officer Sell from that of Officer Krueger. Officer Sell is supposedly the one that struck plaintiff both outside the bar when he was taken into custody and at the hospital. Nothing in the entire record suggests that Officer Krueger did anything to plaintiff herself or that she was in a position to prevent Sell from striking him.

8

Although plaintiff asserts in his proposed findings of fact that Officer Krueger "stood by when Sell battered Chapin, refused his pleas for help, and participated in the cover-up of the incident" (PPFOF ¶ 48), he cites no evidentiary materials in the record to support such an assertion.[4] Even if plaintiff could support such an assertion, his claim against Officer Krueger is that she, along with Officer Sell, assaulted and beat him. (Compl. ¶ 10.) There is no factual basis whatsoever for that claim. Accordingly, summary judgment will be granted as to Officer Krueger.

The same is not true, however, with respect to the claim against Officer Sell. The parties have given substantially different accounts of both plaintiff's arrest and Officer Sell's conduct in the early morning hours of August 10, 2002. Plaintiff's version is that Officer Sell brutally struck him in the face with a flashlight without provocation and then later at the hospital repeatedly struck him in the stomach, again without provocation. Officer Sell's version is diametrically opposed. To be sure, there are significant difficulties with plaintiff's account, especially of the injury to his eye, including the fact that he was severely intoxicated and has given multiple versions of the events in question. But the defendants' argument that the amount of force used in this case was reasonable as a matter of law completely ignores plaintiff's version of the facts. In so arguing, defendants ignore the obligation of the court in deciding motions for summary judgment to view the facts in the light most favorable to the non-moving party. In view of plaintiff's version of the facts, Officer Sell's motion for summary judgment must be denied.

---

[4] Were I to consider plaintiff's "record page" which I have order struck, see note 3, the result would be the same. The evidentiary material cited in support of this assertion in plaintiff's "record page" doesn't even mention Officer Krueger.

9

**II. Plaintiff's claim against the City of Oshkosh**

While plaintiff's claim against the Officer Sell requires a trial, his § 1983 claim against the City of Oshkosh plainly lacks merit. The Seventh Circuit has held that a municipality is subject to liability under 42 U.S.C. § 1983 only when there is

> (1) an express policy that would cause a constitutional deprivation if enforced;
>
> (2) a common practice that is so widespread and well settled as to constitute a custom or usage with the force of law even though it is not authorized by written law or express policy [and that practice causes a constitutional injury]; or
>
> (3) an allegation that a person with final policy-making authority caused the constitutional injury.

*Lawrence*, 391 F.3d at 844.

Plaintiff offers no evidence that an express policy of the City of Oshkosh caused his injury. To the contrary, plaintiff states in his proposed findings of fact that "Oshkosh Police have policies as to excessive force but [the officers] did not follow them in this case" (Pl's PFOF ¶ 5), and that "Officer Sell did not conform to Oshkosh policies and used excessive force against Chapin." (*Id.* ¶ 6.) Plaintiff also states in his response to defendants' proposed findings of fact that "City of Oshkosh . . . written rules and procedures . . .were not followed." (Pl.'s Resp. ¶ 5.)

Plaintiff does not allege that a person with final policy-making authority caused his injury. Plaintiff argues that a shift commander did not follow up on plaintiff's father's request for an investigation of the incidents at issue. (Br. in Opp. at 21; Grogan Decl., Ex. 22.) Even assuming, rather implausibly, that a shift commander is a person with final policy-making authority for the City of Oshkosh, plaintiff does not explain how a failure to investigate an incident after the incident

10

occurs could have "caused" his injury. *Cf. Lawrence*, 391 F.3d at 844 (holding that rejection of plaintiff's complaint by county officials does not make county liable for plaintiff's injuries).

Plaintiff does claim that he was not the only one to fall victim to excessive force at the hands of an Oshkosh police officer. He cites a jury inquest that found probable cause to believe that six Oshkosh police officers (none of whom is a defendant in this case) committed the criminal offense of homicide by negligent handling of a dangerous weapon, contrary to Wis. Stat. § 940.08(1), in the death of one Walter F. Pagel on January 10, 2000. (Grogan Decl., Ex. 3.) Plaintiff also cites a civil complaint against the City of Oshkosh and two of its officers (neither of whom is a defendant in this case) alleging excessive use of force against one Larry W. Staerkel on February 14, 1999. (Grogan Decl., Ex. 4.) A search of the court's records indicates that the Staerkel case settled and was dismissed upon stipulation of the parties. Finally, plaintiff cites two complaints made to the City of Oshkosh against Officer Sell, only one of which involved excessive use of force and neither of which was sustained. (Grogan Decl., Exs. 4-5.) Plaintiff does not allege that any of these cases involved excessive use of force in a manner at all similar to the case at bar. Even taken in the light most favorable to the plaintiff, these facts cannot establish that the conduct alleged was a common practice so widespread and well settled as to constitute custom or usage with the force of law in the City of Oshkosh. Accordingly, the City is entitled to summary judgment on plaintiff's § 1983 claim against it.

It also appears, however, that plaintiff has asserted a state law claim of negligent supervision against the City of Oshkosh. I noted in my order of November 10, 2004, that while the complaint was somewhat confusing, it appeared such a claim had been alleged. Wisconsin does recognize a claim for negligent supervision. *Miller v. Wal-Mart Stores, Inc.*, 580 N.W.2d 233 (Wis.

11

1998). In order to prevail on a claim of negligent supervision, plaintiff must show that the City had knowledge of a potential and unreasonable risk posed by the Officers he claims abused him. *Doe v. Archdiocese of Milwaukee,* 700 N.W.2d 180, 193 (Wis.2005).

Here, there is some evidence of previous complaints lodged against Officer Sell. Plaintiff previously requested the defendant police officers' personnel files in order to determine the nature and number of complaints, and moved to compel their production when the City refused his request. I denied plaintiff's motion on the ground that similar acts would not be admissible as propensity evidence or for any other permissible purpose under Fed. R. Evid. 404. *See* Order of June 13, 2005. Although I remain convinced that evidence of other acts would not be admissible against Officer Sell, I now conclude that such information, if it exists, may be relevant to plaintiff's negligent supervision claim. Accordingly, I now vacate my previous order denying plaintiff's motion to compel and direct the City to produce any disciplinary records or reports involving complaints of police brutality or excessive force contained in the personnel files of Officer Sell. The records, if any, may be produced pursuant to a protective order prohibiting their further disclosure absent further order of the court. I will withhold ruling on this claim and allow plaintiff twenty day after receiving such records to supplement his response to the City's motion for summary judgment. The City will then have ten days after plaintiff's response to reply.

**III. Plaintiff's motion for an extension**

Plaintiff has moved for an extension of time to allow him to name a rebuttal expert on police procedures. On June 13, 2005, the court gave plaintiff thirty days to name such an expert and to submit the report required by Fed. R. Civ. P. 26(a)(2)(B). (Order of June 13, 2005.) In support of his motion, plaintiff states that he contacted four potential experts, two of whom declined to testify

12

due to conflicts of interest and one of whom lacked expertise in the relevant field. The fourth expert is the same expert plaintiff indicated he was considering in his initial disclosures in June of 2004; however, plaintiff states that this expert is very expensive and therefore not an ideal choice.

Given the history of discovery in this case, the court concludes that no extension of the expert deadlines is warranted. Discovery in this case was initially scheduled to close on February 18, 2005. The court later extended that deadline to May 1, 2005. Defendants named their expert in police procedures on March 31, 2005. By the time plaintiff moved for an extension, he had had well over three months to find a rebuttal expert and to obtain his report. Plaintiff has known the identity of his desired expert for over a year. While the court sympathizes with the desire of counsel to conduct litigation at the minimum possible cost, plaintiff had ample opportunity to determine whether a cheaper expert was available. Accordingly, plaintiff's motion for an extension will be denied.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Docket #68) is hereby **GRANTED** with respect to plaintiff's claim against Officer Krueger and his § 1983 claim against the City of Oshkosh. The court withholds ruling on plaintiff's claim against the City for negligent supervision, and the City is ordered to produce any disciplinary records or reports relating to complaints of police brutality or excessive force lodged against Officer Sell. Plaintiff shall have twenty days after receipt of such records to supplement his response and defendants shall have ten days thereafter to reply. Defendants' motion is otherwise **DENIED.** Docket #81 shall be **STRUCK** from the record. That part of my order of June 13, 2005, Docket #73, denying the Motion to Compel, Docket 64, is **VACATED** and the City is directed to produce any disciplinary

records or reports involving complaints of police brutality or excessive force contained in the personnel files of Officer Sell. Plaintiff's motion for an extension (Docket #83) is hereby **DENIED.** The clerk shall arrange a telephone conference with the parties so this matter can be placed on the trial calendar.

**SO ORDERED.**

Dated this   25th   day of August, 2005.

                                                s/ William C. Griesbach
                                                William C. Griesbach
                                                United States District Judge